**Case No. 24-40282**

---

### *IN THE UNITED STATES COURT OF APPEALS*
### *FOR THE FIFTH CIRCUIT*

---

Gary Smith; Martha Smith

*Plaintiffs -- Appellants,*

vs.

*State Farm Lloyds,*

*Defendant -- Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS SHERMAN DIVISION
USDC No. 4:21-CV-837**

---

**BRIEF OF APPELLANTS**

---

Wm.  Charles Bundren
Lead Attorney
Texas State Bar No. 03343200
Email: charles@bundrenlaw.net
**BUNDREN LAW GROUP, PLLC**
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
Tel: (214) 808-3555
**ATTORNEYS FOR APPELLANTS**

June 23, 2025

**Case No. 24-40282**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

---

Gary Smith; Martha Smith

*Plaintiffs -- Appellants,*

vs.

*State Farm Lloyds,*

*Defendant -- Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS SHERMAN DIVISION
USDC No. 4:21-CV-837**

---

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record makes the following certificate as described in the Federal Rules of Appellate Procedure 26.1 and 28(a)(1), and Fifth Circuit Rules 26.1, 28.2.1, and IOP 26.1:

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court

may evaluate possible disqualification or recusal.

## Plaintiffs-Appellants

Gary Smith
Martha Smith

William Charles Bundren
BUNDREN LAW GROUP, PLLC
2591 Dallas Pkwy., Suite 300
Frisco, TX 75034

## ATTORNEY FOR PLAINTIFFS-APPELLANTS

## Defendant-Appellee

State Farm Lloyds

### SKELTON & WOODY PLLC

**J. HAMPTON SKELTON, Esq.**
State Bar No.:      18457700
hskelton@skeltonwoody.com
**EDWARD F. KAYE, Esq.**
State Bar No.:      24012942
ekaye@skeltonwoody.com
**R. ASHLEY APPLEWHITE, Esq.**
State Bar No.:      24059388
aapplewhite@skeltonwoody.com
**PAT MAHAFFEY, ESQ.**
pmaheffy@skeltonwoody.com
248 Addie Roy Road, Suite B-302
Austin, Texas 78746
Telephone: (512) 651-7000
Facsimile: (512) 651-7001

## ATTORNEYS FOR DEFENDANT-APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will assist this Court in arriving at the correct decision because of the unique facts and law applicable to reaching a correct result. Appellant requests oral argument on the issues presented by this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS                                    1

STATEMENT REGARDING ORAL ARGUMENT                           3

TABLE OF CONTENTS                                                                   4

TABLE OF AUTHORITIES                                                           6

STATEMENT OF JURISDICTION                                               9

STATEMENT OF ISSUES PRESENTED FOR REVIEW              9

STATEMENT OF THE CASE AND RELEVANT FACTS          10

SUMMARY OF THE ARGUMENT                                              24

ARGUMENT AND AUTHORITIES                                          26


I. THE DISTRICT COURT ERRED IN DENYING GARY AND MARTHA SMITH'S MOTION TO EXCLUDE JOE SHAHID AS AN EXPERT WITNESS AND ANY EXPERT WITNESS OPINIONS WHICH RELIED ON JOE SHAHID PHOTOGRAPHS AND OPINIONS BECAUSE STATE FARM FAILED TO TIMELY DISCLOSE FACTS AND DATA CONSIDERED BY
JOE SHAHID                                                                                26


II. THE DISTRICT COURT ERRED IN GRANTING STATE FARM A JUDGMENT ON THE JURY VERDICT BECAUSE THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE AND STATE FARM'S COUNSEL IMPROPERLY USED EXHIBITS IN FRONT OF THE JURY THAT WERE NOT ADMITTED AND EXCLUDED AT TRIAL WHICH PREJUDICED AND IMPROPERLY INFLUENCED THE JURY.                        33

    1.    The verdict was against the great weight of the evidence.          36

    2.    State Farm's counsel's Improper use of exhibits in the presence of the jury prejudiced Gary and Martha Smith and made the trial unfair.          47

3.      State Farm and State Farm's counsel engaged in improper pretrial conduct and improper conduct during the trial which prejudiced Gary and Martha Smith.                                                      51

4.      The district court failed to exclude State Farm's exhibits which were not properly disclosed in accordance with the Court's Orders.       53

5.      Gary and Martha Smith were unfairly surprised by State Farm's late disclosure of over 900+ photographs taken by Joe Shahid the day before jury selection began, which prejudiced Gary and Martha Smith's ability to prepare for trial.                                                             55

6.      As a result of the culmination of State Farm's and State Farm's counsel's improper conduct before trial and during trial, the trial was not fair to Gary and Martha Smith and resulted in an unreliable verdict.       56


CONCLUSION AND RELIEF SOUGHT                                      58

SIGNATURE COUNSEL                                                 58

CERTIFICATE OF SERVICE                                           59

CERTIFICATE OF COMPLIANCE WITH RULE 32                           61

# TABLE OF AUTHORITIES

**FEDERAL CASES**

**Supreme Court of United States**

*Gasperini v. Center for Humanities, Inc.,* 518 U.S. 450 (1996)     47

*Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909)     30

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
    427 U.S. 639 (1976)     29

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)     33

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)     58

**Circuit Courts of Appeals**

*Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009 (2nd Cir. 1998)     30

*Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511 (5th Cir. 1985)     32

*Caroll v. Jaques Admiralty Law Firm, P. C.,*
    110 F.3d 290 (5th Cir. 1997)     30

*Cates v. Creamer*, 431F.3d 456 (5th Cir. 2005).     30

*Chilcutt v. U.S.*, 4 F.3d 1313 (5th Cir. 1993)     32

*Crannpark, Inc. v. Rogers Grp.*, 821 F.3d 723 (6th Cir. 2016)     47

*Coane v. Farrera Pan Candy Co.*, 898 F.2d 1030 (5th Cir. 1990).     30

*Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976)     32

*Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831 (5th Cir. 2004)     36

*Erskine v. Consolidated* Rail Corp., 814 F.2d 266 (6th Cir. 1987)     57

*Genmoora Corp. v. Moore Bus. Forms, Inc.*,
    939 F.2d 1149 (5th Cir. 1991)     57

*Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*,
    62 F.3d 767 (5th Cir. 1995)     58

 *Gray v. Bicknell*, 86 F.3d 1472 (8th Cir. 1996)     58

*Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875 (5th Cir. 2004).     32

*Hand v. United States*, 441 F.2d 529 (5th Cir.1971).     58

*Gilster v. Primebank*, 747 F.3d 1007 (8th Cir. 2014)     52

*Johnson v. Motor Co.*, 988 F.3d 573 (5th Cir. 1993)     52

*Jones v. Wal—Mart Stores, Inc.*, 870 F.2d 982 (5th Cir. 1989)     58

*Marshall v. Segona*, 621 F.2d 763 (5th Cir. 1980)     32

*Martinez v. Food City, Inc.*, 658 F.2d 369 (5th Cir.1981)     58

*Security Nat'l Bank v. Jones Day,* 800 F.3d 936 (8th Cir. 2015).     29

*Shows v. Jamison Bedding, Inc.*, 671 F.2d 927 (5th Cir. 1982).     36

*Smith v. Transworld Drilling Co.*, 773 F.2d 6101 (5th Cir. 1985).     35

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
    685 F.3d 486 (5th Cir. 2012).     30

*Spurlin v. Gen. Motors Corp.*, 528 F.2d 612 (5th Cir. 1976).     36

*United States ex rel. Weyerhaeuser v. Bucon Constr. Co.*,
    430 F.2d 420 (5th Cir. 1970).     36

*Whiting v. Westray*, 294 F.3d 943 (7th Cir. 2002).                    52

**Federal District Courts**

*Accresa Health LLC v. Hint Health Inc.*, 2021 U.S. Dist. LEXIS 45808, 2021 WL 933101 (E.D. Tx. 2021)                    35

*Biote Med., LLC v. Jacobsen*,
        2021 U.S. Dist. LEXIS 18097 (2021) (E.D. Tex. USDC)                    31

*Cooper v. City of Plano*, 215 U.S. Dist. LEXIS 47812 (E.D. Tx. 2015)                    58

*Torres v. City of San Antonio*, No. SA:14-CV-555-DAE, 2014 U.S. Dist. LEXIS 176575, 2014 WL 7339122 (W.D. Tex. Dec. 23, 2014).                    31

*Wapp Tech LTD P'Ship v. Seattle Spinco, Inc.*,
        2021 U.S. Dist. LEXIS 21904 (2021) (E.D. Tex. USDC).                    31

**RULES**

FED. R. CIV. P. 26(A)(2)(B)(ii)                    30-31

FED. R. CIV. P. 26(F)                    30

FED. R. CIV. P. 35                    30

FED. R. CIV. P.37(A)                    30, 33

FED. R. CIV. P.37(b)(2)(A).                    32

FED. R. CIV. P. 37(b)(2)(A)(v)-(vi).                    32, 37

FED R. CIV. P. 37(B)(2)(A)(II).                    32

FED. R. CIV. P. 37(d)(1)(A)                    30

**STATUTES**

28 U.S.C. §1291                    10

28 U.S.C. §1332                    10

28 U.S.C §1367                    10

28 U.S.C §2201                    10

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. §1332, §1367 and §2201, and this Court has jurisdiction pursuant to 28 U.S.C. §1291 which grants jurisdiction to courts of appeals from final decisions of the district courts. The district court rendered a Final Judgment on the jury verdict on February 2, 2023. (ROA 5214). Appellants timely filed Appellants' Motion for New Trial on March 2, 2023 (ROA 5281-5666). The district court denied Appellants' Motion for New Trial on March 25, 2024 (ROA 5921-5942). Appellants' Notice of Appeal was filed on April 23, 2024. (ROA 5943-5946).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the district court erred in denying Appellants Gary and Martha Smith's Motion to Exclude the expert witness testimony of Joe Shahid and testimony from any witness relying on photographs taken by Joe Shahid or opinions made by Joe Shahid because State Farm failed to timely disclose the facts or data considered by Joe Shahid in forming his opinions?

2.     Whether the district court erred in granting State Farm a Judgment on the jury verdict because the verdict was against the great weight of the evidence and State Farm Lloyds's counsel improperly used exhibits in front of the jury that

were not admitted and excluded at trial which prejudiced and improperly influenced the jury?

## STATEMENT OF THE CASE

**1.     Facts relevant to the issues submitted for review.**

On Sunday, January 22, 2023 at 2:03 PM -- the day before jury selection began -- State Farm disclosed 275 photographs taken by Joe Shahid during his first investigation of Gary and Martha Smith's home on November 11, 2019, and 718 photographs taken by Joe Shahid on his second inspection of Gary and Martha Smith's home on June 25, 2020. (ROA 4776-4779; Pat Mahaffey, Esq. email to Gary and Martha Smith's counsel at *2:03 PM on Sunday, January 22, 2023*.) State Farm did not produce these photographs, 993 photographs in total, taken by Joe Shahid prior to 2:*03 PM on Sunday, January 22, 2023,* the day before jury selection began. State Farm failed to supplement its disclosures and discovery obligations under the district court's Orders, the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Eastern District of Texas. *On Sunday, January 22, 2023*, State Farm filed State Farm's Second Amended Exhibit List which listed "Exhibits 148 and 149" as the 993 photographs that State Farm failed to disclose to Gary and Martha Smith. (ROA 20 Ex. Dkt. #120; ROA 4614-4622; ROA 4621, Exs. 148-149). Exhibits 148 and 149 were pictures taken by Joe Shahid,

the expert witness called by State Farm when he inspected the home of Gary and Martha Smith on November 11, 2019 and June 25, 2020 but not disclosed to Gary and Martha Smith until the day -- Sunday, January 22, 2023 at 2:03 p.m. -- before the jury selection began. Gary and Martha Smith had less than 24 hours to review and deliberate the over 900 photographs contained in Exhibits 148 and 149. Joe Shahid was the primary expert witness who testified for State Farm. (ROA 4795; 10203-10364).

Joe Shahid conducted an investigation of Gary and Martha Smith's home on November 11, 2019 and June 25, 2020. State Farm disclosed Joe Shahid as an expert witness on June 29, 2022 and disclosed his reports and, *allegedly* all of the photographs Joe Shahid took Gary and Martha Smith's home. (ROA 4715-4768). The deposition of Joe Shahid was taken on September 28, 2022, and Gary and Martha Smith served a deposition notice requiring Joe Shahid to produce all of his documents and records reviewed by him in arriving at his opinions. (ROA 4769-4782).

State Farm' obligation to pay Gary and Martha Smith (1) the cost of repair to Gary and Martha Smith's dwelling (under Coverage A), (2) the cost to repair or replace personal property (under Coverage B), and (3) additional living expenses (under Coverage C) of the insurance contract was stipulated to by State Farm.

(ROA 5185- 5190). It is not disputed that Gary and Martha Smith's home was severely damaged by the October 2019 tornado. In fact, Defendant's insurance adjuster, William Givens ("Givens") wrote a report admitting the extensive damage to Gary and Martha Smith's home (dwelling) *caused by the tornado*. (ROA 5827-5395; 7341-7344). State Farm admitted that Gary and Martha Smith's home was "uninhabitable" because of the tornado. (ROA 5307; 7340). Extensive photographs documenting the condition of Gary and Martha Smith's home *prior to the tornado* (ROA 6891-6911) and pictures documenting the damage done to Gary and Martha Smith's home by the tornado were introduced as exhibits by Gary and Martha Smith. (ROA 6838-6848; 6912-7076). Pictures taken by State Farm also documented the extensive damage to Gary and Martha Smith's home caused by the tornado, (ROA 7321-7491).

Gary Smith and Martha Smith testified extensively regarding what the tornado did to their home since they were in the home during the tornado. Gary Smith (ROA 10156-10157; 9576-9584), and Martha Smith (ROA 10153-10154; 10156-10157; 10161). Gary and Martha Smith testified regarding the condition of their home prior to the tornado -- that there were no cracks in the walls or foundation and nothing to suggest that the foundation of the house had "settled" or moved and properly functioning doors -- and the condition of their home after the tornado --

12

cracks in the walls and foundation and doors did not function properly and stuck. (ROA 10149-10151; 10153- 10154; 9560-9593; 9585-9593). Patrick Brown (ROA 9917-9919) and Randall Wilkinson (ROA 9853-9861) also testify regarding the condition of Gary and Martha Smith's home *before* the tornado -- that there were no cracks in the walls or foundation and nothing to suggest that the foundation of the house had "settled" and properly functioning doors -- and the condition of their home after the tornado -- cracks in the walls and foundation and doors did not function properly and stuck. Even Bob Parker, State Farm's agent, referred to the tornado at Gary and Martha Smith's home as "devastating." (ROA 9682; 9684-9685).

State Farm hired William Givens to investigate the damage done to the home (dwelling) of Gary and Martha Smith Gary Smith and to prepare a cost of repair estimate. (ROA 9595-9596). Gary Smith, Martha Smith (ROA 10175-10176) and Patrick Brown (ROA 9922-9923) all testified that Givens admitted that the dwelling had been "racked", it was a "total loss" and that State Farm would pay more money than the initial payment of $138,000 given to Gary and Martha Smith for the dwelling claim (Coverage A) (ROA 9922-9924; 10175-10176; 9922-9923; 9596-9601). Givens told Gary and Martha Smith that the $138,000 check from State Farm "is not all, just the beginning and there will be more money coming" but State Farm

never paid Gary and Martha Smith any additional money to repair the dwelling. (ROA 9601-9602).

Givens was never called as a witness by State Farm. State Farm offered no evidence to dispute the results of Givens' inspection report or Givens' admissions. State Farm offered no evidence to support the basis for the $138,000 payment for damages to the dwelling. State Farm admitted that Gary and Martha Smith's home was "racked" and "totaled." (ROA 10172-10174). State Farm's adjuster Givens admitted that the house was "racked." (10175-10176).

Keiani Smith testified as an expert witness for Gary and Martha Smith regarding the discovery of asbestos and other hazardous materials in Gary and Martha Smith dwelling which must be removed prior to the beginning of any repairs for the safety of workers performing repairs. (ROA 9873-9879). State Farm offered no evidence disputing the presence of asbestos and other hazardous materials in Gary and Martha Smith's home which must be removed prior to the beginning repairs for the safety of workers performing repairs. Charles Oneal testified as an expert witness for Gary and Martha Smith that the cost to remove or remediate the hazardous materials in the Gary and Martha Smith's dwelling is "$39,500." (ROA 9883-9888). State Farm offered no evidence disputing this testimony.

Gary and Martha Smith's expert witness Bill Hart ("Hart") testified that the cost to remove and remediate the hazardous materials in Gary and Martha Smith's home was "$42,434." (ROA 7336). Chris Colwell's report estimated "$40,952" as the cost to remove hazardous materials. (ROA 7241). State Farm offered no evidence to rebut Gary and Martha Smith's evidence regarding the cost to remove the hazardous materials for the safety of workers before the repairs began, and no evidence that State Farm paid Gary and Martha Smith for this cost.

Gary and Martha Smith's expert witness, William Hart ("Hart"), testified extensively that the cost to repair the dwelling was "$741,500." (ROA 7302-7339; 10077-10079). State Farm never offered any evidence to rebut this testimony of William Hart. Gary and Martha Smith's expert witness Griffin Hendon ("Hendon") also testified extensively that the cost to repair the dwelling was "$758,000." (ROA 7272-7274; 10133-10137). The cost of repair estimates of Hart and Hendon were introduced as exhibits (ROA 7302-7339; and ROA 7272-7274), as well as the estimate of cost of repair of Chris Colwell (ROA 7240-7271; in the amount of "$529,718"). State Farm offered no evidence rebutting the testimony and repair cost estimates of Hart, Hendon or Chris Colwell.

Givens prepared the cost of repair for State Farm justifying State Farm's payment to Gary and Martha Smith of $138,000; but State Farm did not call Givens to testify regarding his cost of repair estimate, and it was never shown to the jury.

State Farm offered no evidence of the cost to repair Gary and Martha Smith's home. The only evidence offered was (1) Gary and Martha Smith's expert witness Hart's testimony (ROA 10038- 10097) that the cost to repair the dwelling was "$741,500" (ROA 10077-10079), (2) Gary and Martha Smith's expert witness Hendon's testimony that the cost to repair the dwelling was "$741,500" (ROA 10077-10079, 10097) (3) the cost of repair estimates of Hart and Hendon (ROA 7302-7339; 7272-7274) and (4) the cost of repair of Chris Colwell (ROA 7240-7271 in the amount of "$529,718"). There was no other evidence. State Farm introduced no evidence. State Farm did not call Givens to testify. State Farm did not introduce Givens' repair cost estimate.

State Farm claimed in a letter dated August 3, 2020 to Gary and Martha Smith that the damages to Gary and Martha Smith' home *preexisted* the tornado and were caused by "settling, wear, tear, decay, rot and weathering" and that State Farm would not pay any additional money to Gary and Martha Smith to repair Gary and Martha Smith home (dwelling). (ROA 9624; 7363-7366). Gary and Martha Smith's home did not have "settling, wear, tear, decay, rot and weathering"

existing prior to the tornado. (ROA 9624-9625). State Farm never offered any evidence that the damages to Gary and Martha Smith' home *preexisted* the tornado and were caused by "settling, wear, tear, decay, rot and weathering." No witnesses were called by State Farm to substantiate State Farm's claim that the damages to Gary and Martha Smith' home *preexisted* the tornado and were caused by "settling, wear, tear, decay, rot and weathering." State Farm did not pay Gary and Martha Smith for damage done to their home (dwelling), their personal property and for additional living expenses. (ROA 9625-9626).

Martha Smith testified without dispute from State Farm that State Farm failed to pay $10,700 of personal property receipts for personal property of Gary and Martha Smith's damaged by the tornado. (ROA 10171). State Farm offered no evidence in rebuttal to this evidence from Martha Smith. State Farm offered no evidence that State Farm fully paid the cost of repair or replacement of Gary and Martha Smith's personal property.

Gary Smith testified that State Farm refused to pay Gary and Martha Smith $43,000 in additional living expenses incurred by Gary and Martha Smith. (ROA 7077-7205; 7206-7239; 9610-9611; 9616-9619). Gary and Martha Smith's receipts for the additional living expenses -- which State Farm did not pay -- were introduced as Exhibits. (ROA 7077-7205; 7206-7239). State Farm offered no

evidence disputing the additional living expenses incurred by Gary and Martha Smith when their home became "uninhabitable" because of the tornado.

State Farm failed to call (1) any expert witness regarding the cost of repair of Gary and Martha Smith's home caused by the high winds of the tornado, (2) any witness on the full cost to repair or replace Gary and Martha Smith's personal property damaged by the tornado, or (3) any witness disputing Gary and Martha Smith's expense for the additional living expenses.

### 2.    Summary of Procedural History

On October 18, 2021, Appellants Gary and Martha Smith ("Gary and Martha Smith" or "Appellants") filed their Original Complaint (ROA 31-62) against Appellee, State Farm Lloyds ("State Farm') for, *inter alia*, (1) a material breach of the parties' insurance contract and insurance policy, and (2) State Farms violation of various provisions of the Texas Insurance Code and other Texas law which controls the conduct of insurance companies.

On November 21, 2021 State Farm filed its answer to Gary and Martha Smith' Original Complaint. (ROA 70-83). State Farm admitted most of the averments of the Original Complaint including, *inter alia*, the admission that on October 20, 2019 Gary and Martha Smith's home was damaged by a tornado which was a covered loss under the insurance contract and that the loss included claims for damage to the

dwelling, damage to personal property and additional living expenses. (ROA 70-71, ¶¶ 3-7). State Farm asserted various affirmative defenses. (ROA 79-82). State Farm filed an amended answer (ROA 122-140) in which State Farm claimed that the damage to Gary and Martha Smith's home preexisted the tornado and was caused by "settling, cracking, wear, tear and rot." (ROA 133).

Prior to submission case to the jury, the parties stipulated to the following undisputed facts:

1. All conditions precedent to the filing of Plaintiffs' lawsuit have been satisfied;

2. On October 20, 2019, Plaintiffs' personal residence and the home was struck by a tornado;

3. Plaintiffs are citizens of the State of Texas and reside in Collin County, Texas;

4. Plaintiffs currently reside in McKinney, Texas and are residents of Collin County, Texas;

5. On or about April 22, 2019, Plaintiffs and Defendant enter into an insurance contract identified as insurance policy 58-BO-W994-4 (the "Policy" or the "Insurance Policy");

6. The Policy had an effective date of June 8, 2019 to June 8, 2020;

7. The Policy was a "Homeowners Policy" approved by the State of Texas and further identified as "Texas HW-2143" insurance contract;

8. Defendant's Policy states that it "is one of the broadest forms available today and provides you [Gary and Martha Smith] with an outstanding value in your insurance dollars.;

9. Plaintiffs paid Defendant a "premium" of "$2,718.15", as demanded by Defendant for the policy and the insurance coverage promised by Defendant;

10. The Policy insured the "Residence Premises" located at 6446 Orchard Ln., Dallas, TX 7530-4121;

11. Plaintiffs made multiple written demands on Defendant to pay Plaintiffs the alleged "cost to repair or replace" their personal property damaged by the October 20, 2019, tornado;

12. Defendant acknowledged receipt of multiple written demands from Plaintiffs regarding Plaintiffs alleged "cost to repair or replace" their personal property damaged by the October 20, 2019, tornado;

13. Defendant has denied Plaintiffs alleged "cost to repair or replace" their personal property damaged by the October 20, 2019, tornado;

14. Defendant does not dispute the occurrence of a tornado damaged Plaintiffs' property on October 20, 2019:

15. Defendant does not dispute that the October 20, 2019, tornado is an event, occurrence or "loss insured" under the Policy;

16. Defendant does not dispute that Plaintiffs' home (dwelling) was damaged by the October 20, 2019 tornado;

17. Defendant does not dispute that some of Plaintiffs' personal property was damaged by the October 20, 2019, tornado;

18. Defendant does not dispute that Plaintiffs' home (dwelling) was not inhabitable after the occurrence of the October 20, 2019, tornado;

19. Defendant does not dispute that Plaintiffs could no longer live in their home (the dwelling) after the occurrence of the October 20, 2019 tornado;

20. Defendant does not dispute that Plaintiffs incurred "reasonable and necessary increase in costs" "to maintain the normal standard of living" for any period of time after the occurrence of the October 20, 2019, tornado;

21. Plaintiffs made multiple written demands on Defendant "to pay for the sum of all losses combined" under "Coverage C- Loss of Use" for the "reasonable and necessary increase in cost incurred by Plaintiffs to maintain their normal standard of living" after the October 20, 2019

tornado destroyed their home ("Plaintiffs' Additional Living Expense Demands");

22. Defendant acknowledged receipt of multiple written demands from Plaintiffs regarding Plaintiffs' Additional Living Expense Demands;

23. Defendant has denied, and continues to deny, and refuses to pay Plaintiffs additional sums beyond what was already paid for Plaintiffs' alleged Additional Living Expense Demands;

24. After getting Defendant notice of the October 20, 2019 tornado, Plaintiffs gave Defendant access to the property in order for Defendant to conduct an examination and inspection of the damages to the dwelling and Plaintiffs' personal property.

25. On April 29, 2020, Plaintiffs sent a written demand letter to Defendant.

26. Defendant acknowledged receipt of Plaintiffs' April 29, 2020 Response on April 29, 2020.

27. In response to Plaintiffs' April 29, 2020 Response, by letter dated May 28, 2020, Defendant requested the opportunity to "re-evalaute and investigate the claim."

28. The next day, on May 29, 2020, by written letter, Plaintiffs agreed to give Defendant the opportunity to "re-evalaute and investigate the claim" on June 5 or June 18, 2020.

29. By letter dated June 2, 2020, Defendant asked to inspect the property on June 25, 2020.

30. Defendant re-inspected by Plaintiffs' home on June 25, 2020.

31. On July 29, 2020, ABS, reported the results of their June 25, 2020 inspection.

32. On or about August 2, 2020, Defendant responded to Plaintiffs' attorney's demand letter.

33. Plaintiffs have given Defendant the opportunity to have access to Plaintiffs' home and to conduct inspections requested by Defendant.

34. Plaintiffs have not denied any access or opportunity to inspect Plaintiffs' home upon any request by Defendant.

35. Plaintiffs have provided Defendant with inspection reports regarding the alleged cost to repair Plaintiffs' home.

36. Plaintiffs provided Defendant with certain of Plaintiffs' engineering reports, consulting reports, photographs, drawings and the alleged cost to

repair the dwelling of Plaintiffs' home damaged by the October 20, 2019 tornado.

(ROA 5185-5190).

On January 23, 2023, a jury was selected and the jury trial began. (ROA 20). Between January 23, 2023 and January 27, 2023 Gary and Martha Smith and State Farm presented evidence in the jury trial. (ROA 20-21). On January 27, 2023, the jury rendered a verdict in favor of State Farm finding that State Farm did not fail to comply with the insurance contract. (ROA 5208-5213; RE Tab. 4). On February 2, 2023, the district Court entered a Judgment on the Jury Verdict for State Farm. (ROA 5214; RE Tab. 5). On March 2, 2023, Gary and Martha Smith filed a Motion for New Trial (ROA 5281-5666). On March 25, 2024, the district court denied Gary and Martha Smith's Motion for New Trial (ROA 5921-5942; RE Tab. 6). Gary and Martha Smith filed their Notice of Appeal on April 23, 2024. (ROA 5943-5946; RE Tab. 2).

## SUMMARY OF THE ARGUMENT

The district court committed reversible error, erred and abused the district court's discretion in refusing to grant Gary and Martha Smith's motion to exclude the testimony of Joe Shahid because State Farm failed to disclose all of the facts and data relied upon by Joe Shahid in arriving at his expert witness opinions until the

day before jury trial selection began. State Farm offered no legitimate excuse for its failure to disclose all of the facts and data relied upon by Joe Shahid in arriving at his expert witness opinions until the day before jury trial selection began. Additionally, Gary and Martha Smith were prejudiced by not having all of the facts and data relied upon by Joe Shahid in arriving at his expert witness opinions until the day before jury trial selection began in order to be able to prepare for the jury trial in cross-examination of Joe Shahid. Therefore, the district court erred and abused its discretion in permitting Joe Shahid to testify as a witness at the trial.

The district court erred in granting State Farm a judgment on the jury verdict because (1) the verdict was against the great weight of the evidence, (2) State Farm's counsel improperly used exhibits in front of the jury that were not admitted and excluded at trial which influenced the jury, prejudiced Gary and Martha Smith and made the trial unfair, (3) State Farm and its counsel engaged in improper pretrial conduct and improper conduct during the trial which prejudiced Gary and Martha Smith and made the trial unfair, and as a result of the culmination of State Farm and its counsel's improper conduct, the trial was not fair to Gary and Martha Smith and resulted in an unreliable verdict.

## ARGUMENTS AND AUTHORITIES

## I.

## THE DISTRICT COURT ERRED IN DENYING GARY AND MARTHA SMITH'S MOTION TO EXCLUDE JOE SHAHID AS AN EXPERT WITNESS AND ANY EXPERT WITNESS OPINIONS WHICH RELIED ON JOE SHAHID PHOTOGRAPHS AND OPINIONS BECAUSE STATE FARM FAILED TO TIMELY DISCLOSE FACTS AND DATA CONSIDERED BY JOE SHAHID

Gary and Martha Smith moved the district court to exclude the testimony of Joe Shahid and the testimony of any witnesses relying on Joe Shahid's photographs or opinions (ROA 4706-4782). The district court denied Gary and Martha Smith's Motion and permitted Joe Shahid to testify as an expert witness for State Farm despite State Farm's failure to timely disclose the facts and data considered by Joe Shahid in full forming his opinions. (ROA 4795; 10202-10203). Joe Shahid was the primary expert witness who testified for State Farm. (ROA 4795; 10203-10364). The district Court erred in denying Gary and Martha Smith's Motion to exclude the testimony of Joe Shahid and the testimony of any witnesses relying on Joe Shahid's photographs or opinions and permitting Joe Shahid to testify as an expert witness for State Farm because State Farm failed to timely disclose the facts and data considered by Joe Shahid in forming his opinions and such error was substantial and significant and requires reversal of the district court Final Judgment for State Farm.

Joe Shahid conducted an investigation of Gary and Martha Smith's home on November 11, 2019 and June 25, 2020. State Farm disclosed Joe Shahid as an expert witness on June 29, 2022 and disclosed his reports and, *allegedly* all of the photographs Joe Shahid took Gary and Martha Smith's home. (ROA 4715-4768). The deposition of Joe Shahid was taken on September 28, 2022, and Gary and Martha Smith served a deposition notice requiring Joe Shahid to produce all of his documents and records reviewed by him in arriving at his opinions. (ROA 4769-4782).

On Sunday, January 22, 2023 at 2:03 PM -- the day before jury selection began -- State Farm disclosed 275 photographs taken by Joe Shahid during his first investigation of Gary and Martha Smith's home on November 11, 2019, and 718 photographs taken by Joe Shahid on his second inspection of Gary and Martha Smith's home on June 25, 2020. (ROA 4776-4779; Pat Mahaffey, Esq. email to Gary and Martha Smith's counsel at *2:03 PM on Sunday, January 22, 2023*.) State Farm did not produce these photographs, 993 photographs in total, taken by Joe Shahid prior to 2*:03 PM on Sunday, January 22, 2023,* the day before jury selection began. State Farm failed to supplement its disclosures and discovery obligations under the district court's Orders, the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Eastern District of Texas. *On Sunday,*

*January 22, 2023*, State Farm filed State Farm's Second Amended Exhibit List which listed "Exhibits 148 and 149" as the 993 photographs that State Farm failed to disclose to Gary and Martha Smith. (ROA 20 Ex. Dkt. #120; ROA 4614-4622; ROA 4621, Exs. 148-149). Exhibits 148 and 149 were pictures taken by Joe Shahid, the expert witness called by State Farm when he inspected the home of Gary and Martha Smith on November 11, 2019 and June 25, 2020 but not disclosed to Gary and Martha Smith until the day -- Sunday, January 22, 2023 at 2:03 p.m. -- before the jury selection began. Gary and Martha Smith had less than 24 hours to review and deliberate the over 900 photographs contained in Exhibits 148 and 149. The district court erred when it did not strike and exclude Joe Shahid as an expert witness for State Farm and prohibit Joe Shahid from testifying because State Farm failed to timely disclose "the facts or data considered by [Joe Shahid] in forming" his opinions as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii) in the district court Pretrial Order and Local Rules of the United States District Court for the Eastern District of Texas.

A court may strike witnesses as a discovery sanction to (1) secure compliance with the rules of discovery, (2) deter others from violating the rules of discovery, or (3) punish those who violate the rules of discovery. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); and, *Security Nat'l Bank*

*v. Jones Day,* 800 F.3d 936, 942 (8ᵗʰ Cir. 2015). A court can impose sanctions for a party's conduct for bad faith, obstructiveness or failure to produce witnesses for depositions. *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349-54 (1909) (striking pleadings and entering default did not violate due process). A court may impose sanctions such as striking witnesses if a party does not permit discovery. FRCP 26(f), 35 or 37(a); and FRCP 37(b)(2)(A). A party who fails to "provide or permit discovery" -- such as refusing to produce witnesses for depositions under the party's control -- violates the Federal Rules of Civil Procedure and is subject to sanctions, including striking witnesses who are the subject matter of the failure to "provide or permit discovery." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-89 & n.3 (5ᵗʰ Cir. 2012).

Sanctions are also available under FRCP 37(c) for failure of State Farm to comply with State Farm's discovery obligations and disclosure obligations under Federal Rule of Civil Procedure 26(a)(2)(B)(ii). A motion under FRCP 37(d)(1)(A) does not require an earlier discovery order before the court can impose sanctions. *See* FRCP 37(d)(1)(A); *Coane v. Farrera Pan Candy Co*., 898 F.2d 1030, 1031 (5ᵗʰ Cir. 1990). State Farm may also be sanctioned. *See* FRCP 37(f); and, *Apex Oil Co. v. Belcher Co*., 855 F.2d 1009, 1014 (2ⁿᵈ Cir. 1998): *Caroll v. Jaques Admiralty Law Firm, P. C.,* 110 F.3d 290, 292 (5ᵗʰ Cir. 1997). The Court may impose sanctions for

State Farm's failure to comply with its disclosure obligations under <u>Federal Rule of Civil Procedure 26(a)(2)(B)(ii)</u> and discovery obligations and Orders of the Court. *Brown v. Columbia Sussex Corp.*, <u>664 F.3d 182, 190-91</u> (7th Cir. 2011). "Under <u>Federal Rule of Civil Procedure 26</u> (g), parties have an affirmative duty to engage in pretrial discovery in a *responsible manner.* <u>Fed. R. Civ. P. 26</u> (g)" *Biote Med., LLC v. Jacobsen*, <u>2021 U.S. Dist. LEXIS 18097</u>(2021) (E.D. Tex. USDC Judge Mazzant) (emphasis added). A party that does not cooperate in discovery is in violation of Federal Rules of Civil Procedure.

State Farm's failure and refusal to produce the photographs (over 900) are critical to this case violates Federal Rules of Civil Procedure Rule 26, Rule 30 and subjects the witnesses to been stricken pursuant to Rule 37. *Wapp Tech LTD P'Ship v. Seattle Spinco, Inc.,* <u>2021 U.S. Dist. LEXIS 21904</u> (2021) (E.D. Tex. USDC Judge Mazzant).

Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e) *the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial* unless the failure was substantially justified or harmless." (Emphasis added). *See Torres v. City of San Antonio*, No. SA:14-CV-555-DAE, <u>2014 U.S. Dist. LEXIS 176575, 2014 WL 7339122</u> at *1 (W.D. Tex. Dec. 23, 2014). The

"sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Torres*, 2014 U.S. Dist. LEXIS 176575, 2014 WL 7339122 at *1. "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Torres*, 2014 U.S. Dist. LEXIS 176575, 2014 WL 7339122 at *1. When evaluating whether a violation of Rule 26 is harmless for purposes of Rule 37(c)(1), the court looks to four factors: (1) the explanation for the failure to disclose; (2) the importance of the testimony or evidence; (3) potential prejudice to the opposing party in allowing the testimony or evidence; and (4) the possibility of a continuance to cure such prejudice. *Torres*, 2014 U.S. Dist. LEXIS 176575, 2014 WL 7339122 at *1; and, *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

According to the Fifth Circuit, Rule 37(b)(2)(A) "authorizes courts to appropriately respond to and deal with parties which have disobeyed discovery orders" or refused to permit discovery – such as refusal to permit witnesses under a party's control to be deposed. *Chilcutt v. U.S.*, 4 F.3d 1313, 1319-20 (5th Cir. 1993) (*citing Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511 (5th Cir. 1985); *Marshall v. Segona*, 621 F.2d 763 (5th Cir. 1980); *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976)). Undoubtedly, Federal Rule of Civil

Procedure 37 authorizes sanctions for failure of State Farm to permit discovery of witnesses under its control by deposition. A court may bar the disobedient party from introducing evidence." FED R. CIV. P. 37(b)(2)(A)(ii). *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) (citation omitted); *accord* Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi). The sanctions of Rule 37 must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express*, 447 U.S. at 763-64 (citation omitted).

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) very plainly requires a party to disclose all "facts or data considered by the [expert] witness." State Farm failed to do so. If a party fails to provide information the party was required to disclose, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial. Fed. R. Civ. P. 37(c)(1). The district court erred and abused the district court's discretion by denying Gary and Martha Smith's motion to exclude the testimony of Joe Shahid and the testimony of any witnesses relying on Joe Shahid's photographs or opinions because it is undisputed that State Farm did not timely disclose the over 900 photographs taken by Joe Shahid of Gary and Martha Smith's home until the day before trial began. Producing "facts and data"

used by expert in forming the expert's opinions the day before trial is inexcusable and the rule of exclusion is mandatory. The district court erred in permitting Joe Shahid to testify at trial.

## II.

**THE DISTRICT COURT ERRED IN GRANTING STATE FARM A JUDGMENT ON THE JURY VERDICT BECAUSE THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE AND STATE FARM'S COUNSEL IMPROPERLY USED EXHIBITS IN FRONT OF THE JURY THAT WERE NOT ADMITTED AND EXCLUDED AT TRIAL WHICH PREJUDICED AND IMPROPERLY INFLUENCED THE JURY.**

The district court erred in granting State Farm a judgment on the jury verdict because (1) the verdict was against the great weight of the evidence, (2) State Farm's counsel improperly used exhibits in front of the jury that were not admitted and excluded at trial which influenced the jury, prejudiced Gary and Martha Smith and made the trial unfair, (3) State Farm and its counsel engaged in improper pretrial conduct and improper conduct during the trial which prejudiced Gary and Martha Smith and made the trial unfair, and as a result of the culmination of State Farm and its counsel's improper conduct, the trial was not fair to Gary and Martha Smith and resulted in an unreliable verdict.

The district court erred in granting judgment to State Farm on the jury verdict because the verdict was "against the weight of the evidence", "the trial was

unfair" and "prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5ᵗʰ Cir. 1985).

In *Oasis Research,, supra.*, 2015 U.S. Dist. LEXIS 1794, *10 (E.D. Tx. 2015), the court found that "no reasonable jury could have found that Byrd was a co-inventor of the patents-in-suit. Defendants failed to show by clear and convincing evidence that Byrd conceived a significant part of the invention. Defendants also failed to provide evidence sufficient to corroborate Byrd's claims of co-inventorship. The jury in this case reached a verdict that simply was not reasonable given the evidence presented at trial. There was simply no basis for the jury to conclude that Byrd was a co-inventor, especially given the fact that the jury found that Atwood was not a co-inventor." On that granted a new trial was warranted.

The district court erred in granting State Farm a Judgment on the jury verdict because "the verdict [was] against the weight of the evidence, . . . , the *trial was unfair*, or prejudicial error was committed in its course." *Accresa Health LLC v. Hint Health Inc.*, 2021 U.S. Dist. LEXIS 45808, *4, 2021 WL 933101 (E.D. Tx. 2021), *citing, Smith, supra.*, 773 F.2d 610, 613 (5th Cir. 1985).

The standard for granting a new trial is whether or not "the verdict was against the great weight of the evidence—not merely against the preponderance of the evidence." *Accresa Health LLC, supra* at *4-5, *citing, Taylor v. Seton Healthcare*,

No. A-10-CV-650 AWA, <u>2012 U.S. Dist. LEXIS 87502, 2012 WL 2396880</u>, at *2
(W.D. Tex. June 22, 2012) (first citing *Dresser-Rand Co. v. Virtual Automation,
Inc.*, <u>361 F.3d 831, 838-39</u> (5th Cir. 2004); and then citing *Shows v. Jamison
Bedding, Inc.*, <u>671 F.2d 927, 930</u> (5th Cir. 1982)). The court may "weigh the
evidence when considering whether to grant a new trial under this standard, and *the
evidence need not be taken in the light most favorable to the verdict.*" *Accresa Health
LLC*, *supra* at *6-7, *citing*, *Shows, supra,* <u>671 F.2d at 930</u> (5th Cir. 1982) (*quoting
Conway, supra.*, <u>610 F.2d at 365</u> (5th Cir.1980) (emphasis added)."*A verdict can be
against the 'great weight of the evidence,' and thus justify a new trial, even if there
is substantial evidence to support it*." *Conway, supra* (*citing United States ex rel.
Weyerhaeuser v. Bucon Constr. Co.*, <u>430 F.2d 420, 423</u> (5th Cir. 1970)) (emphasis
added).  Whether Gary and Martha Smith are entitled to a new trial requires the court
to review "the substance of the evidence presented—not merely the number of
admitted documents or testifying witnesses." *Id.* "The Fifth Circuit has promulgated
factors to consider which include the "[(1)] simplicity of the issues, [(2)] the extent
to which the evidence is in dispute, and [(3)] the absence of any pernicious or
undesirable occurrence at trial." *Id.* (first citing *Conway*, <u>610 F.2d at 363</u>; and then
citing *Spurlin v. Gen. Motors Corp.*, <u>528 F.2d 612, 620</u> (5th Cir. 1976)). In this case
there was clearly "pernicious" or "undesirable occurrence[s] at trial" as noted by the

improper conduct of State Farm's counsel by continually referring in the presence of the jury to exhibits and (photographs) that were not admitted (State Farm Exhibits 148 and 149 (over 900 photographs disclosed to Gary and Martha Smith the day before trial began), and clearly not be used or admitted because they were not timely disclosed to Gary and Martha Smith. This improper conduct by State Farm's counsel was particularly prejudicial during the cross-examination of Gary and Martha Smith' key expert engineering witness, Dr. Witherspoon. This "pernicious" and improper conduct by State Farm's counsel mandates that a new trial be granted.

A new trial should have been granted for the following reasons:

**1.    The verdict was against the great weight of the evidence.**

State Farm' obligation to pay Gary and Martha Smith (1) the cost of repair to Gary and Martha Smith's dwelling (under Coverage A), (2) the cost to repair or replace personal property (under Coverage B), and (3) additional living expenses (under Coverage C) of the insurance contract was stipulated to by State Farm. (ROA 5185- 5190). The jury could not have arrived at the answer of "no" on question one in the verdict without concluding that State Farm paid Gary and Martha Smith for (1) the full cost of repair to Gary and Martha Smith's dwelling (under Coverage A), (2) the full cost to repair or replace their personal property (under Coverage B), and (3) the full additional living expenses (under Coverage

C) of the insurance contract; but, the great weight of the evidence establishes that State Farm did not make all such full payments to Gary and Martha Smith. It is not disputed that State Farm failed to comply with the contract if State Farm did not make all of the payments to Gary and Martha Smith as required by the insurance contract and the Texas Insurance Code.

It is not disputed that Gary and Martha Smith's home was severely damaged by the October 2019 tornado. In fact, Defendant's insurance adjuster, William Givens ("Givens") wrote a report admitting extensive damage to Gary and Martha Smith's home *caused by the tornado*. (ROA 5827-5395; 7341-7344). State Farm admitted that Gary and Martha Smith's home was "uninhabitable" because of the tornado. (ROA 5307; 7340). Extensive photographs documenting the condition of Gary and Martha Smith's home *prior to the tornado* (ROA 6891-6911) and pictures documenting the damage done to Gary and Martha Smith's home by the tornado were introduced as exhibits by Gary and Martha Smith. (ROA 6838-6848; 6912-7076). Pictures taken by State Farm also documented the extensive damage to Gary and Martha Smith's home caused by the tornado, (ROA 7321-7491). The great weight of the evidence establishes that Gary and Martha Smith's home was extensively damaged by the tornado. It is undisputed that the high winds created by the tornado are a covered event or occurrence under the insurance contract

which obligated State Farm to pay for the cost of repair. State Farm never disputed that fact.

Gary Smith and Martha Smith testified extensively regarding what the tornado did to their home since they were in the home during the tornado. Gary Smith (ROA 10156-10157; 9576-9584), Martha Smith (ROA 10153-10154; 10156-10157; 10161). Gary and Martha Smith testified regarding the condition of their home prior to the tornado -- that there were no cracks in the walls or foundation and nothing to suggest that the foundation of the house had "settled" or moved and functioning doors -- and the condition of their home after the tornado -- cracks in the walls and foundation and doors did not function properly and stuck. (ROA 10149-10151; 10153- 10154; 9560-9593; 9585-9593). Patrick Brown (ROA 9917-9919) and Randall Wilkinson (ROA 9853-9861) also testify regarding the condition of Gary and Martha Smith's home *before* the tornado -- that there were no cracks in the walls or foundation and nothing to suggest that the foundation of the house had "settled" and functioning doors -- and the condition of their home after the tornado -- cracks in the walls and foundation and doors did not function properly and stuck. Even Bob Parker, State Farm's agent, referred to the tornado at Gary and Martha Smith's home as "devastating." (ROA 9682; 9684-9685).

State Farm hired William Givens to investigate the damage done to the home (dwelling) of Gary and Martha Smith Gary Smith and to prepare a cost of repair estimate. (ROA 9595-9596). Gary Smith, Martha Smith (ROA 10175-10176) and Patrick Brown (ROA 9922-9923) all testified that Givens admitted that the dwelling had been "racked", it was a "total loss" and that State Farm would pay more money than the initial payment of $138,000 given to Gary and Martha Smith for the dwelling claim (Coverage A) (ROA 9922-9924; 10175-10176; 9922-9923; 9596-9601). Givens told Gary and Martha Smith that the $138,000 check from State Farm "is not all, just the beginning and there will be more money coming" but State Farm never paid Gary and Martha Smith any additional money to repair the dwelling. (ROA 9601-9602).

Givens was never called to dispute his statements. State Farm offered no evidence to dispute the results of Givens' inspection report or Givens' admissions. State Farm offered no evidence to support the basis for the $138,000 payment for damages to the dwelling. State Farm admitted that Gary and Martha Smith's home was "racked" and "totaled." (ROA 10172-10174). State Farm's adjuster Givens admitted that the house was "racked." (10175-10176).

Keiani Smith testified as an expert witness for Gary and Martha Smith regarding the discovery of asbestos and other hazardous materials in Gary and

39

Martha Smith dwelling which must be removed prior to the beginning of any repairs for the safety of workers performing repairs. (ROA 9873-9879). State Farm offered no evidence disputing the presence of asbestos and other hazardous materials in Gary and Martha Smith's home which must be removed prior to the beginning repairs for the safety of workers performing repairs. Charles Oneal testified as an expert witness for Gary and Martha Smith that the cost to remove or remediate the hazardous materials in the Gary and Martha Smith's dwelling is "$39,500." (ROA 9883-9888). State Farm offered no evidence disputing this testimony.

Gary and Martha Smith's expert witness Bill Hart ("Hart") testified that the cost to remove and remediate the hazardous materials in Gary and Martha Smith's home was "$42,434." (ROA 7336). Chris Colwell's report estimated "$40,952" as the cost to remove hazardous materials. (ROA 7241). State Farm offered no evidence to rebut Gary and Martha Smith's evidence regarding the cost to remove the hazardous materials for the safety of workers before the repairs began, and no evidence that State Farm paid Gary and Martha Smith for this cost.

The ultimate questions submitted to the jury concerned the cost of repair of (1) the dwelling, (2) the cost to repair or replace the damaged personal property, and (3) the amount of additional living expenses demanded by Gary and Martha

Smith and which State Farm did not pay and. (ROA_7077-7205). If State Farm did not pay Gary and Martha Smith for (1) the full cost of repair to Gary and Martha Smith's dwelling (under Coverage A), (2) the full cost to repair or replace the personal property (under Coverage B), and (3) the full additional living expenses demanded by Gary and Martha Smith and unpaid by State Farm (under Coverage C), then it is undisputed that State Farm failed to comply with the contract. The jury's verdict that State Farm did not fail to comply with the contract is, therefore, based on the jury's conclusion that State Farm did pay Gary and Martha Smith for (1) the full cost of repair to Gary and Martha Smith's dwelling (under Coverage A), (2) the full cost to repair or replace personal property (under Coverage B), and (3) the full additional living expenses (under Coverage C) demanded by an unpaid by State Farm; however, that conclusion (verdict) is against the great weight of the evidence.

The verdict was against the great weight of the evidence regarding cost of repair of Gary and Martha Smith's dwelling. Gary and Martha Smith's expert witness, William Hart ("Hart"), testified extensively that the cost to repair the dwelling was "$741,500." (ROA_7302-7339; 10077-10079). State Farm never offered any evidence to rebut this testimony of William Hart. Gary and Martha Smith's expert witness Griffin Hendon ("Hendon") also testified extensively that

the cost to repair the dwelling was "$758,000." (ROA 7272-7274; 10133-10137). The cost of repair estimates of Hart and Hendon were introduced as exhibits (ROA 7302-7339; and ROA 7272-7274), as well as the estimate of cost of repair of Chris Colwell (ROA 7240-7271; in the amount of "$529,718"). State Farm offered no evidence rebutting the testimony and repair cost estimates of Hart, Hendon or Chris Colwell.

Givens prepared the cost of repair for State Farm justifying State Farm's payment to Gary and Martha Smith of $138,000; but State Farm did not call Givens to testify regarding his cost of repair estimate, and it was never shown to the jury. Thus, there was no evidence for the jury to consider from Givens or State Farm to justify or explain State Farm's payment to Gary and Martha Smith of $138,000 for repair the cost to the dwelling.

State Farm offered no evidence of the cost to repair Gary and Martha Smith's home. The only evidence the jury could consider was (1) Gary and Martha Smith's expert witness Hart's testimony (ROA 10038- 10097) that the cost to repair the dwelling was "$741,500" (ROA 10077-10079), (2) Gary and Martha Smith's expert witness Hendon's testimony that the cost to repair the dwelling was "$741,500" (ROA 10077-10079, 10097) (3) the cost of repair estimates of Hart and Hendon (ROA 7302-7339; 7272-7274) and (4) the cost of repair of Chris

Colwell (ROA 7240-7271 in the amount of "$529,718"). There was no other evidence. State Farm introduced no evidence. State Farm did not call Givens to testify. State Farm did not introduce Givens' repair cost estimate. State Farm claimed in a letter dated August 3, 2020 that the damages to Gary and Martha Smith' home *preexisted* the tornado and were caused by "settling, wear, tear, decay, rot and weathering" and that State Farm would not pay any additional money to Gary and Martha Smith to repair Gary and Martha Smith home (dwelling). (ROA 9624; 7363-7366). Gary and Martha Smith's home did not have "settling, wear, tear, decay, rot and weathering" existing prior to the tornado. (ROA 9624-9625). State Farm never offered any evidence that the damages to Gary and Martha Smith' home *preexisted* the tornado and were caused by "settling, wear, tear, decay, rot and weathering." No witnesses were called by State Farm to substantiate State Farm's claim that the damages to Gary and Martha Smith' home *preexisted* the tornado and were caused by "settling, wear, tear, decay, rot and weathering." State Farm did not pay Gary and Martha Smith for damage done to their home (dwelling), their personal property and for additional living expenses. (ROA 9625-9626).

Therefore, the only evidence the jury could consider was the evidence offered by Gary and Martha Smith. And, consequently, the great weight of the evidence

regarding whether State Farm complied with the contract to pay for the full cost to repair Gary and Martha Smith's home is against the verdict.

The verdict was against the great weight of the evidence regarding cost of repair or replacement of Gary and Martha Smith's personal property. Martha Smith testified without dispute that State Farm failed to pay $10,700 of personal property receipts for personal property of Gary and Martha Smith's damaged by the tornado. (ROA 10171). State Farm offered no evidence in rebuttal to this evidence from Martha Smith. Defendant offered no evidence that State Farm fully paid the cost of repair or replacement of Gary and Martha Smith's personal property. If State Farm failed to pay Gary and Martha Smith the full amount of the cost to repair or replace Gary and Martha Smith's personal property damaged by the tornado, then State Farm failed to comply with the contract. The jury's conclusion (verdict) that the contract was not breached by Defendant's failure to pay the full amount of the cost of repair or replacement of Gary and Martha Smith's personal property is against the great weight of the evidence.

The verdict was against the great weight of the evidence regarding the additional living expenses incurred by Gary and Martha Smith and not paid by State Farm. Gary Smith testified that State Farm refused to pay Gary and Martha Smith $43,000 in additional living expenses incurred by Gary and Martha Smith.

(ROA 7077-7205; 7206-7239; 9610-9611; 9616-9619). Gary and Martha Smith's receipts for the additional living expenses -- which State Farm did not pay -- were introduced as Exhibits. (ROA 7077-7205; 7206-7239). State Farm offered no evidence disputing the additional living expenses incurred by Gary and Martha Smith when their home became "uninhabitable" because of the tornado. The jury's conclusion (verdict) that the State Farm did not fail to comply with the contract by State Farm's failure to pay Gary and Martha Smith $43,000 in additional living expenses is against the great weight of the evidence.

State Farm failed to call (1) any expert witness regarding the cost of repair of Gary and Martha Smith's home caused by the high winds of the tornado, (2) any witness on the full cost to repair or replace Gary and Martha Smith's personal property damaged by the tornado, or (3) any witness disputing Gary and Martha Smith's expense for the additional living expenses. State Farm simply failed to produce evidence that would support the jury verdict. The jury could not have arrived at the conclusion (verdict) that State Farm did not fail to comply with the contract by failing to pay Gary and Martha Smith the contractual amounts due under the insurance contract based on the evidence admitted. Thus, the verdict is against the great weight of the evidence that State Farm did pay Gary and Martha Smith for (1) the full cost of repair to Gary and Martha Smith's dwelling (under

Coverage A), (2) the full cost to repair or replace personal property (under Coverage B), and (3) the full additional living expenses incurred by Gary and Martha Smith (under Coverage C).

If the verdict appears to be against the weight of the evidence the Court should disregard the verdict and grant a new trial. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 450, 433 (1996). In this case, the jury's verdict was against the great weight of the evidence, this Court should disregard the jury verdict and grant a new trial for that reason. *Crannpark, Inc. v. Rogers Grp.*, 821 F.3d 723, 737 (6th Cir. 2016); and, *Cates v. Creamer*, 431F.3d 456, 460 (5th Cir. 2005). State Farm produced no evidence (no expert testimony and no exhibits or estimates) regarding the estimated cost of repair to Gary and Martha Smith's home. Gary and Martha Smith admitted substantial evidence of the estimated cost of repair of their home caused by the tornado and, without any rebuttal or contrary evidence offered by State Farm. Gary and Martha Smith offered evidence regarding the cost to repair and replace Gary and Martha Smith's personal property. State Farm offered no evidence in rebuttal. And, Gary and Martha Smith had admitted substantial evidence of the cost of the additional living expenses which form did not pay without any rebuttal evidence from State Farm. Therefore, the great weight of the evidence is against the verdict and, therefore, this Court should grant a new trial.

**2.      State Farm's counsel's Improper use of exhibits in the presence of the jury prejudiced Gary and Martha Smith and made the trial unfair**.

State Farm's counsel improperly used exhibits in front of the jury that were excluded and not admitted at trial, which influenced the jury and prejudiced Gary and Martha Smith and made the trial unfair and the jury verdict unreliable. On Sunday January 22, 2023, the day before jury selection began, State Farm served State Farm's Trial Exhibits 126-149, and "State's Farm Second Amended Exhibit List." (ROA 5584-5588; 5590-5598). State Farm's January 22, 2023 production included over 900+ photographs "of the Smith home taken on November 11, 2019 and June 25, 2022" by Joe Shahid, State Farm's key expert witness. The photographs had never previously been disclosed by State Farm. (ROA 5573-5574).

During the cross-examination of Gary and Martha Smith's key expert engineering witness, Dr. Tom Witherspoon, State Farm's counsel misrepresented photographs as "Exhibit 147" ("Exhibit 147" were "photographs of tools submitted by Plaintiffs" (ROA 5597) "taken on November 12 of 2019, approximately three weeks after the storm" when in actuality the photographs used by State Farm's counsel to cross examine Dr. Witherspoon, were of State Farm's Exhibits "148 and 149." (ROA 5626-5527). Later in the cross-examination of Dr. Witherspoon, State

Farm's counsel again referred to "Defendant's Exhibit 148" (ROA 5632 and 5636), and continued his examination of Dr. Witherspoon using exhibits and photographs that there were only produced to Gary and Martha Smith the day before the trial began, on Sunday, January 22, 2023. *Id.* at (ROA 5626-5662), and which were not admitted.

State Farm combined hundreds of photographs into two Exhibits, 148 and 149, but did not, during the cross-examination of Dr. Witherspoon, identify the specific photograph being referred to during the examination by a bates number. Gary and Martha Smith objected. (ROA 5659 – 5665) State Farm's counsel had no excuse for his use of exhibits and photographs that were not admitted and that were only disclosed to Gary and Martha Smith the day before the trial began and, consequently, the Court excluded the photographs and instructed the jury to "disregard" the photographs because "that's not fair" because of in the words of the Court "you shouldn't have used them at all because it is not permitted. It's not permitted under the Court rules. That is way too late to produce documents." (5659-5665). State Farm's counsel, with years of litigation experience, should have clearly known that photographs produced to the opposing party the day before trial begins can never be used in the trial and in front of the jury. State Farm's counsel's conduct was clearly improper and prejudicial to Gary and Martha Smith.

State Farm's counsel persisted in the presence of the jury requiring another objection from Gary and Martha Smith with an instruction to "disregard." (ROA 5663). State Farm's counsel was instructed on the second day of trial, January 24, 2023 (ROA 5664-5665), to not use Defendant's Exhibits 127-149 without first approaching the bench. (ROA 5664-5665. State Farm's counsel continual use of exhibits and photographs that were clearly inadmissible because of their late disclosure and prejudiced the jury with respect to the key expert witness of Gary and Martha Smith, Dr. Witherspoon, and resulted in a trial that was not fair, a verdict that is unreliable, and for this reason a new trial should be granted.

Yet again on January 26, 2023, State Farm's counsel once again used photographs (exhibits) that were not specifically identified in the examination of Mike Madden in violation of the Court's ruling on January 24, 2023. (ROA 5552-5555). In addition, State Farm's counsel never showed proof that the photographs he was using (Defendant's Exhibit 104) were previously produced or disclosed to Gary and Martha Smith. Also, during the examination of Mike Madden, State Farm's counsel referred in the presence of the jury to "Exhibit 151" which was not previously disclosed or produced to Gary and Martha Smith prior to the beginning of the trial. (ROA- 5556-5558).

After a sidebar conference, the district court again instructed State Farm's counsel that he cannot use any of the documents produced on Sunday, January 22, 2023. (ROA 5573). Nevertheless, State Farm's counsel again immediately referenced "Exhibit 127" in the presence of the jury which the Court had previously excluded. (ROA 5573-5574). The Court was then forced to instruct State Farm's counsel, again, that exhibits "produced on the day before trial" are "too late. You can't use it." (ROA 5574).

On the same day, later in the examination of Mr. Madden, State Farm's counsel once again referred to a document in the presence of the jury that was not identified as a Defendant's trial exhibit before the trial began. Gary and Martha Smith objected and the Court sustained the objection. (ROA 5575-5577). Later in the day on January 26, 2023, Gary and Martha Smith again objected to "Exhibit 151" because it was not timely disclosed on State Farm's exhibit list and not timely produced or disclosed. (ROA 5578). Under questioning by the Court, State Farm's counsel admitted that "Exhibit 151" "was not identified, apparently, before this Sunday." (ROA 5581). The district court then admonished State Farm's counsel about the "multiple times" State Farm's counsel attempted to use exhibits that were not "produced until Sunday on the exhibit list" and noted that "you didn't comply with that again, so I'm going to strike that exhibit" and even questioned if "I should

grant a mistrial" and "I mean this is ridiculous, I don't know how I put that back in the bottle." (ROA 5581-5582). State Farm was engaged in this misconduct in the hopes that the district court would declare a mistrial and cure all of State Farm's trial misconduct.

The repetitive improper and misconduct by State Farm's counsel by using exhibits in the presence of the jury which were not admitted and that were only produced to Gary and Martha Smith the day before jury selection prejudiced Gary and Martha Smith, is unfair, and for that reason the Court should grant a new trial. A new trial should be granted when opposing counsel engages in improper conduct during the trial. *Johnson v. Motor Co.*, 988 F.3d 573, 582 (5th Cir. 1993); *Gilster v. Primebank*, 747 F.3d 1007 (8th Cir. 2014); and, *Whiting v. Westray*, 294 F.3d 943, 943-44 (7th Cir. 2002).

### 3.    State Farm and State Farm's counsel engaged in improper pretrial conduct and improper conduct during the trial which prejudiced Gary and Martha Smith.

State Farm and State Farm's counsel's improper trial conduct was not the only improper conduct of State Farm and State Farm's counsel which prejudiced Gary and Martha Smith. State Farm consistently, during discovery in the pretrial process, failed and refused to comply with the Court's Order Governing Proceedings (ROA 28-93) and the district court's Scheduling Order (ROA 111-

116). Gary and Martha Smith called these failures to the district court's attention on numerous occasions. (ROA 606-655; 667-749; 2546-2756; and 2837-3114). State Farm did not file State Farm's exhibit list until January 17, 2023 (ROA 3749-3755) which was untimely and a violation of the Court's Scheduling Order (ROA 111-116). Gary and Martha Smith objected to State Farm's late filing of State Farm's Exhibit List. (ROA 4171-4234). Because of the late production of photographs (over 900) taken by Joe Shahid (ROA 4614-4621), Gary and Martha Smith moved the district court to exclude testimony from Joe Shahid. (ROA 4171-4234). The district court erroneously refused to do so.

State Farm's failure to comply with the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Eastern District of Texas and the district court's Orders prejudiced Gary and Martha Smith in their ability to prepare their case for trial. For instance, State Farm did not produce photographs (over 900+) taken by Joe Shahid (ROA 4614-4621) until 2:07 PM on Sunday before the trial began. Gary and Martha Smith were denied disclosure of relevant materials which Gary and Martha Smith should have been able to use in Gary and Martha Smith's presentation of its case to the jury (including cross-examination of Joe Shahid), but Gary and Martha Smith were never had that opportunity because of the late production and disclosure of the over 900+ photographs taken by Joe

Shahid of Gary and Martha Smith's home on "November 11, 2019" and "June 25, 2020" (ROA 5597). Despite the Court's excluding the photographs, Gary and Martha Smith, nevertheless, were prejudiced because they never had the opportunity to review and deliberate the photographs in preparation for trial. This, in combination with the other improper trial and pretrial conduct of State Farm and State Farm's counsel resulted in an unfair trial, prejudice to Gary and Martha Smith, and an unreliable verdict.

4.     **The District Court failed to exclude State Farm's exhibits which were not properly disclosed in accordance with the Court's Orders.**

State Farm's Exhibit 104 was improperly admitted into evidence and shown to the jury. State Farm did not disclose or produce a copy of State Farm's Exhibit 104 until January 17, 2023 (ROA 3749-3756) -- just a few days before jury selection -- which is not in compliance with the district court's Scheduling Order. Exhibit 104 was a collection of 510+ photographs of random photographs. The photographs were not individually marked as exhibits, thus making it impossible for Gary and Martha Smith to specifically identify a particular photograph and object to the introduction of the particular photograph into evidence. The photographs comprising State Farm's Exhibit 104 were never authenticated as to who took the photograph and the date the photograph was taken. None of the 500+ photographs comprising Exhibit 104 were ever authenticated by State Farm and State Farm offered no testimony

regarding the dates the photographs were taken or who took the photographs. The unidentified and undated photographs were never authenticated and should never have been admitted into evidence. State Farm was ordered to "show proof" that the photographs were authentic and to establish a foundation for their admission, but State Farm failed to do so during the trial. (ROA 5552-5557). Gary and Martha Smith were prejudiced by the admission of Exhibit 104 into evidence in the district court erred in admitting Exhibit 104.

Gary and Martha Smith were prejudiced by State Farm's failing to comply with the District Court's Governing Order (ROA 28-93) and failing to produce State Farm's trial exhibits on November 1, 2022 as required by the district court's Scheduling Order (ROA 111-116). Gary and Martha Smith were further prejudiced by State Farm combining 510+ pages of photographs into a single exhibit (Exhibit 104) and referring to this exhibit generally during the trial and not authenticating the individual photograph pages of Exhibit 104 as Ordered by the Court. State Farm's Exhibit 104 should not have been admitted and none of the 500+ photographs should have been used by State Farm during the trial because of State Farm's failure to comply with the Federal Rules of Civil Procedure, the district court's disclosure and Scheduling Orders and the district court's instruction during the trial. Defendant's use during trial of the 500+ photographs comprising Exhibit 104 and the 900+

photographs produced on Sunday, January 22, 2023 and the use of those photographs in cross-examination and direct examination of witnesses was unfair and prejudiced Gary and Martha Smith and for that reason a new trial should be granted. State Farm's counsel's conduct was improper and caused the trial to be unfair, and the jury verdict to be unreliable.

5.    **Gary and Martha Smith were unfairly surprised by State Farm's late disclosure of over 900+ photographs taken by Joe Shahid the day before jury selection began, which prejudiced Gary and Martha Smith's ability to prepare for trial.**

Joe Shahid was the key expert witness for State Farm. State Farm did not disclose or produce over 900+ photographs taken by State Farm's key expert witness, Joe Shahid, until 2:07 PM on Sunday, January 22, 2023, the day before the jury selection began. (ROA 5584-5597). The Court excluded some of the late produced exhibits (including the over 900+ photographs taken by Joe Shahid) but permitted Exhibits 127, 139 and 141 to be admitted. These exhibits should not have been admitted. In addition, despite the exclusion of some portions of the January 22, 2023 untimely exhibit production, Gary and Martha Smith were prejudiced in their preparation for the trial by not having access to the 900+ photographs taken by State Farm's key witness, Joe Shahid, of Gary and Martha Smith's home on "November 11, 2019" and "June 25, 2020" until just one day before the jury was selected. State Farm has no excuse for its improper and prejudicial conduct. A new trial should be

granted because Gary and Martha Smith were unfairly surprised by State Farm's disclosure of over 900+ photographs on the eve of jury selection taken by the key witness for State Farm, Joe Shahid. *Genmoora Corp. v. Moore Bus. Forms, Inc.*, 939 F.2d 1149, 1156 (5th Cir. 1991); *Conway, supra*, 687 F.2d at 266, 272 (5th Cir. 1987); and, *Erskine v. Consolidated* Rail Corp., 814 F.2d 266, 272 (6th Cir. 1987) (documents produced at trial had not been produced in discovery). For this reason, a new trial should be granted.

6.    **As a result of the culmination of State Farm's and State Farm's counsel's improper conduct before trial and during trial, the trial was not fair to Gary and Martha Smith and resulted in an unreliable verdict.**

For the reasons described above, the trial was not fair, and the jury's verdict was not reliable. State Farm and State Farm's counsel's improper conduct during the pretrial and discovery phase of the case, and before selection of jury, and improper conduct during the trial in the presence of the jury resulted in a trial that was not fair to Gary and Martha Smith, and a jury verdict that is not reliable. State Farm and State Farm's counsel habitually violated the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Texas, the Court's Order Governing Proceedings and the Court's Scheduling Order as described herein and, in the documents, filed with the district court. The Federal Rules of Civil Procedure, the district court's disclosure and scheduling

Orders, and Local Rules of the United States District Court for the Eastern District of Texas are meant to "secure the just" and "fair" administration of justice. State Farm and State Farm's counsel consistently violated all procedural rules established by the Federal Rules, the Local Rules and the Court's Orders resulting in a lack of "fairness" to Gary and Martha Smith in violation of established Supreme Court precedent. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

This Court has the power to grant a new trial based upon this Court's overall appraisal of the fairness of the trial and the reliability of the jury's verdict. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996) and, *Smith, supra, 773 F.2d at 612-13*. This Court has discretion to grant a new trial when it is necessary to prevent an injustice, when the jury's verdict is against the manifest weight of the evidence, when the trial was unfair, [or] when prejudicial error occurred." *Cooper v. City of Plano*, 215 U.S. Dist. LEXIS 47812 *12 (E.D. Tx. 2015), *citing, Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774-75 (5th Cir. 1995); *Jones v. Wal— Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989); and, *Smith, supra.*, 773 F.2d at 612-13 (5th Cir. 1985). And the Court has the power to grant a new trial if the trial was unfair. *Smith, supra.*, 773 F.2d at 613, *citing, Carson, supra,* 689 F.2d at 570-71 (5th Cir.1982); *Martinez v. Food City, Inc.*, 658 F.2d 369, 372-74 (5th Cir.1981); and, *Hand v. United States*, 441 F.2d 529, 531 (5th Cir.1971). Based on

the grounds and evidence explained above the trial was unfair, and the jury's verdict is unreliable and against the great weight of the evidence. For these reasons, the Court should grant a new trial.

## III.

## CONCLUSION

For these reasons Appellants, Gary and Martha Smith, pray that the Court reverse the Final Judgment of the district court, and remand this case to the district court for new trial and further proceedings consistent with this Court's decision and opinion.

Respectfully submitted,

**BUNDREN LAW GROUP, PLLC**

/s/ William Charles Bundren
Wm.  Charles Bundren, Esq.
Lead Attorney
Texas State Bar No. 03343200
Email: charles@bundrenlaw.net
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
Tel: (214) 808-3555
**ATTORNEY FOR:**
**APPELLANTS GARY AND MARTHA SMITH**

# <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 23rd day of June, 2025, a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Appellate Procedure and the United States Court of Appeals for the Fifth Circuit Rules and Internal Operating Procedures on all legal counsel of record for any party by serving the following:

**SKELTON & WOODY PLLC**

**J. HAMPTON SKELTON, Esq.**
State Bar No.:     18457700
hskelton@skeltonwoody.com
**EDWARD F. KAYE, Esq.**
State Bar No.:     24012942
ekaye@skeltonwoody.com
**R. ASHLEY APPLEWHITE, Esq.**
State Bar No.:     24059388
aapplewhite@skeltonwoody.com
**PAT MAHAFFEY, ESQ.**
pmaheffy@skeltonwoody.com
248 Addie Roy Road, Suite B-302
Austin, Texas 78746
Telephone: (512) 651-7000
Facsimile: (512) 651-7001

**ATTORNEYS FOR APPELLEE STATE FARM LLOYDS**

__X__ by the Court's CM/ECF Pacer electronic filing System pursuant to Rule 25 of the Fed. R. of App. P. and Rule 25 of the Rules and Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit, and FRAP 25(c)(2)(A), and Rule 25.2.5 of the United States Court of Appeals for the Fifth Circuit by sending it to a Filing User and by filing it with the Court's electronic-filing system on the date indicated above,

_____ by personal delivery, including delivery to a responsible person at the office of legal counsel on the date indicated above pursuant to FRAP 25(c)(1)(A),

_____ by certified mail return receipt requested deposited with the United States Postal Service on the date indicated above pursuant to FRAP 25(c)(1)(B),

___x____ by third-party commercial carrier for delivery within three days on the date indicated above pursuant to FRAP 25(c)(1)(C),

and/or

_____ by email at the email addresses indicated above for Appellee's counsel pursuant to FRAP 25(c)(2)(B), and in accordance with the Rules and Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit, Rules 25.2.4 and 25.2.5.

By: /s/ William Charles Bundren
**ATTORNEY FOR APPELLANTS GARY AND MARTHA SMITH**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS UNDER FEDERAL RULE OF APPELLATE PROCEDURE RULE 32(a) AND FIFTH CIRCUIT RULE 32.3

The undersigned counsel record hereby certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 32(a)(7)(B)(i) because excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   [X]   this brief contains 11,299 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

[ ]     this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.    This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows 2010, in Times New Roman 14-point typeface, or

[ ]     this brief has been prepared in a monospaced typeface using _____ with _____.

/s William Charles Bundren
Wm. Charles Bundren, Esq.
**ATTORNEY FOR APPELLANTS**
**GARY AND MARTHA SMITH**

DATED:     June 23, 2025